Hibbard, P. J.
An action of contract brought by the plaintiff to recover double indemnity, death benefits under two policies of industrial life insurance, issued by the defendant upon the life of Raymond A. Rousseau. Each of the policies contained a clause providing for double indemnity where the insured “sustained .... bodily injuries solely through external, violent and accidental means resulting directly and independently of all other causes, in the death of the Insured within ninety days from date of such bodily injuries. ’ ’ The face of each policy was paid hut the double indemnity was not. The said Raymond A. Rousseau met his death under the circumstances narrated in the decision by the trial court which was as follows:
“I find as follows:
“That Raymond Rousseau, a young man of about twenty years of age, met two other young men at Gardner on the early evening of August 7, 1936; that they *242 had considerable to drink and that during the evening at one place Eousseau had seven drinks of muscatel wine, and at another place had two gin fizzes; that these young men hung around together and were in several liquor places between 7:45 o’clock P. M. and 11:30 P. M.; that they came out on to the street at about 11:30 o’clock P. M: and that Eousseau was ‘staggering,’ ‘his eyes were funny’; he was ‘feeling good’ and ‘pretty well shot’; that the three young men decided to steal an automobile; that they finally found a car which was not locked and one of the men, not Eousseau, attempted to start the car but was unable to do so; that Eousseau then got into the driver’s seat, started the car and drove it about half a mile to his home where he went into the house to get some money; that when he came out of the house and returned to the car another one of the young men named Dupre was sitting in the driver’s seat and he operated the car from then on, Eousseau getting into the back seat.
‘ ‘ The car was driven by Dupre in a westerly direction from Gardner at a high rate of speed and the car was swaying from side to side at about seventy miles per hour, the limit of the capacity of the car. Between Athol and Orange a hitch-hiker was picked up and given a ride to a point farther west at which time Eousseau made no sound. The car proceeded along about seventy miles per hour and the third young man told the driver to cut down his speed but the speed was not cut down.
“At the French King Bridge, about thirty-five miles west of Gardner and five miles east of Greenfield, some Greenfield police officers attempted to stop the car but the car was not stopped. At that time the driver said, ‘We’re all outlaws. We got to stick together,’ and Eousseau mumbled something. The Greenville police officers pursued the car but were left behind. At Greenfield one of the police officers got into another and faster car belonging to the Greenfield Police Department and proceeded westerly to a point about a mile and a half west of Greenfield where they found the car in which the insured was riding wrecked side of the road and the insured lying in the road and had suffered injuries from which he .died almost immediately, the injuries and death resulting from the wrecking of the automobile, the wreck being due to the fact that the car *243 had left the road due to the high rate of speed at which it was being operated.
“At the French King Bridge when Rousseau mumbled something, I find that he was in a drunken stupor and had no intelligent knowledge of what was actually going on at the time.
“I find that the police officers were still pursuing the stolen car although outdistanced and although the stolen car had for a long time been out of their sight at the time it was wrecked, but in view of the fact that the car was operated at its maximum speed prior to being signalled by the police officers, I find that the pursuit of the police officers did not cause the driver to accelerate his speed as that was impossible.”
The plaintiff seasonably filed certain requests for rulings of which two and five only are material. They are as follows :
“2. That there are no implied exceptions applicable to either policy of insurance.”
“5. That the insured’s death was caused by bodily injury that was accidental.”
Both were granted.
The defendant likewise seasonably filed certain requests for rulings, all of which with one exception were denied. Those denied were as follows:
“1. That on all the evidence the plaintiff cannot recover and as grounds therefor the defendant sets forth the following:
a. That the insured’s death did not result from accidental means.
b. That the insured’s death occurred while he was engaged in a criminal act which contributed to his death. ’ ’
“3. That the insured was presumed to know the risk he was taking in riding in a stolen automobile and that death might be the result of such conduct.”
“4. That, if the insured at the time of his injury and death was engaged in the violation of the Statutes of the Commonwealth of Massachusetts and there was a direct causal connection between such violation and *244 the injury and death of the insured, the death of the insured did not result from bodily injury sustained solely through external, violent and accidental means within the terms of the policy.”
. “5. That, if the insured was riding in a car known by him to have been stolen and if this car was being operated at an excessive speed because of the fact that it was being pursued by police officers and as a result of such excessive speed the car overturned and the insured was killed, the plaintiff cannot recover.”
‘ ‘ 6. That, if the insured did not have control of the operation of the car, he was nevertheless a party to a violation of the Statutes of the Commonwealth at the time of his death and the plaintiff cannot recover. ’ ’
“7. That to allow recovery would be against public policy.”
The question presented upon the report is whether there was error in granting the plaintiff’s requests numbered two and five and in the denial of the defendant’s requests.
The contention of the defendant may be briefly stated as follows: The beneficiary cannot recover under the double indemnity clause first because the death was not accidental within the.proper interpretation of that word, and secondly, because to allow recovery under the circumstances of the case would be against public policy.
The facts found by the trial judge and set forth in his decision have been adopted by the parties as an agreed statement of facts.
■ It is not contended by the defendant that the bodily injury and death of the insured were not incurred through external and violent means. It does contend that they were not “accidental” as that word is used in the policies.
The clause found in the policies and above quoted in like or similar phraseology has been before the courts in many jurisdictions. In Piotrowski vs. Prudential Insurance Company, 252 N. Y. S. 313, the Court said “Any occurrence which naturally and probably results from the sitúa *245 tion in which a person voluntarily places himself under such circumstances that he can foresee or will be presumed to foresee the result must be held to be expected by him and is not therefore in any proper sense an accident. He knew the risk and intended to assume it. Therefore as a matter of law his death was not caused by accidental means and the plaintiff is not entitled to recover. It would be against a sound public policy to permit the plaintiff to recover. When one is guilty of committing a felony, his beneficiaries ought not to recover under an insurance policy that does not specifically cover the risk. ’ ’
In this case the insured and three other men had stolen an automobile and were engaged in an endeavor to escape from the police officers who were pursuing them for the purpose of arrest. In order to prevent them from escaping the police officers fired at the car to stop it but without any specific intention of killing its occupants. The Penal Code of New York made such stealing grand larceny in the second degree.
Adopting this definition, let us apply it to the facts in the instant case. Here the insured, after 'meeting two other young men, went with them to some place where they had “considerable to drink” and were in several liquor places up to 11:30 P. M. The insured thereafter was “staggering”, “his eyes were funny”, he was “feeling good” and “pretty well shot”. The three men then decided to steal an automobile and the insured got into the driver’s seat, started the car and drove it about half a mile to his home where he went into the house to get some money. When he came out another of the young men was in the driver’s seat and operated the car thereafter. The car was driven at a high rate of speed, swaying from side to side and at about seventy miles per hour, the limit of the capacity of the car. There was no cutting down in this speed. At one point some *246 police officers attempted to stop the car but were unsuccessful, at which time the driver said “We’re all outlaws, we’ve got to stick together” and the insured mumbled something. The police ear was outdistanced but the officers again took up the chase in a faster car and shortly thereafter came upon the ear in which the insured was riding wrecked beside the road. The insured had suffered injuries from which he died almost immediately.
The Court specifically found that shortly before the accident the insured mumbled something, was in a drunken stupor and had no intelligent knowledge of what was going on. He also found that the police officers were still pursuing the stolen car but in view of the fact that the driver was operating the car at its maximum speed the pursuit did not cause the driver to accelerate his speed as that was impossible.
The most nearly analogous case in this jurisdiction is DeMello vs. John Hancock Mutual Life Insurance Co. 281 Mass. 192. It was there held there could be no recovery upon a policy of life insurance providing for a certain payment upon proof that the insured has “sustained bodily injury solely through external, violent and accidental means” resulting in his death where it appeared that his death was due to injuries received when a boat in which he was employed in the transportation of intoxicating liquor in violation of the Federal statutes was fired on by a Federal revenue cutter after those in control of the boat had refused to “bring-to” following the hoisting of the pendant and ensign on the cutter and the firing of a gun thereon as a signal. It was also there held that recovery would be contrary to public policy.
This decision is not at variance with that in Minasian vs. Aetna Life Insurance Company, 1936 A. S. 1333. The close reasoning in that case as well as the majority opinion seem to require that it not be extended beyond the area therein *247 distinctly set forth. Moreover there is no reference therein to DeMello vs. John Hancock Mutual Life Insurance Company tending to indicate that the doctrine there set forth had been overruled.
It was said in Burt vs. Union Central Life Insurance Company, 187 U. S. 362 “It cannot be that one of the risks covered by a contract of insurance is the crime of the insured. There is an implied obligation on his part to do nothing to wrongfully accelerate-the maturity of the policy. Public policy forbids the insertion in a contract of a condition which would tend to induce crime .and as it forbids the introduction of such a stipulation it also forbids the enforcement of a contract under circumstances which cannot be lawfully stipulated for.”
The facts in the case at bar make this quotation entirely applicable. We must hold that there was prejudicial error. DeMello vs. John Hancock Mutual Life Insurance Company supra is authority for the statement that the circumstances that the insured was not driving the stolen car at the time of the injury and was in a besotted condition do not affect 'the result’reached. The finding of the Trial Judge is reversed. Judgment is to be entered for the defendant.